IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HAROLD MALCOLM SINGFIELD,     *

    Plaintiff,     *

v.     *     Civil Action No. GLR-18-3756

CARLA BUCK,     *

    Defendant.     *

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Carla Buck's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 14). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons explained below, the Court will grant the Motion, which it construes as a motion for summary judgment.

### I.     BACKGROUND[1]

Self-represented Plaintiff Harold Malcolm Singfield is an inmate at North Branch Correctional Institution in Cumberland, Maryland. (Compl. at 1, ECF No. 1). At all times relevant to the Complaint, Singfield was confined at Western Correctional Institution ("WCI") in Cumberland, Maryland. (Statement of Claim ["Supp. Compl."] at 1, ECF No. 1-1). Singfield's Complaint alleges that Buck, a registered nurse, failed to adequately treat

---

[1] Unless otherwise noted, the facts outlined here are set forth in Singfield's Complaint (ECF No. 1) and Statement of Claim (ECF No. 1-1). To the extent the Court discusses facts that Singfield does not allege in his Complaint and Statement of Claim, they are uncontroverted and the Court views them in the light most favorable to the non-moving party. The Court will address additional facts when discussing applicable law.

Singfield's left hand after he injured it during a fight with his cellmate on July 22, 2016. (Id.).[2] As such, the Court begins by briefly outlining Singfield's medical history as it relates to his left hand.

Singfield was first examined by Carla Buck on June 30, 2016, at which time Singfield reported that he had punched another inmate. (Def.'s Mot. Ex. 1 ["Medical Records"] at 2, ECF No. 14-4). Buck observed that Singfield had difficulty bending his fourth and fifth fingers at the knuckles, which appeared to be swollen, as well as possible deformity. (Id.). Buck scheduled Singfield for evaluation by a medical provider the following morning to determine if an x-ray was needed and gave him Motrin for pain. (Id.). Singfield was not in distress and was returned to his cell. (Id.; Buck Decl. ¶ 3, ECF No. 14-6).

On July 1, 2016, Singfield was seen by nurse practitioner Beverly McLaughlin, who observed that Singfield's left hand was swollen, especially the fourth and fifth fingers, and that he had limited range of movement with moderate pain. (Medical Records at 4–7). McLaughlin sent Singfield to the emergency room at Western Maryland Regional Medical Center where he was diagnosed with a "boxer's fracture" and treated with a splint, wrap, and arm sling. (Id.). Singfield returned to WCI the same day. (Id.). Upon his return to WCI, Singfield was seen by Dr. Barrera, who noted that Singfield said, "I'm good[—]my hand

---

[2] Singfield also alleges that several correctional officers and other staff at WCI ignored his requests to be separated from his cellmate, which caused Singfield to suffer trouble sleeping, weight loss, and emotional distress, as well as physical injuries from fighting with his cellmate. (Supp. Compl. at 1). However, because the Complaint fails to name these individuals as Defendants, the Court will only consider Singfield's claims relating to his medical treatment.

2

don't even hurt." (Id.). Dr. Barrera sent Singfield back to his housing, prescribed him pain medicine, and requested an orthopedic consultation for follow up. (Id. at 7–8).

Singfield was subsequently seen and treated by several medical providers for his fracture and his complaints of associated pain. (See id. at 9, 13–14). Singfield underwent an x-ray on July 7, 2016, which showed a fracture in his pinky finger. (Id. at 10). On July 21, 2016, Singfield was seen by orthopedist Roy Carls, who determined the fracture was in a good position for healing without need for surgical repair. (Id. at 16–17). During this time, Singfield was receiving Tylenol #3 and Motrin 800 mg for pain. (See id. at 9, 13–14).

On the evening of Friday, July 22, 2016, Singfield "refractured" his finger and was sprayed with pepper spray during a fight with his cellmate. (Supp. Compl. at 1). Singfield was then seen by Buck in the early hours of July 23, 2016 to receive treatment for pepper spray exposure. (Buck Decl. ¶ 4). Overall, Singfield's vital signs were stable, he was not in respiratory distress, and he was offered a shower. (Medical Records at 18). Singfield reported pain in his left hand, and Buck noted that he had recently received treatment for his fracture, but she did not observe any swelling. (Id. at 18–19; Buck Decl. ¶ 5). According to Singfield, however, Buck told him, "your hand is swollen and bent beyond norma[l]cy, and is probably broken, but since you want to get in a fight in the middle of the night on a weekend, you will have to wait until Monday [July 25, 2016] to see a doctor." (Supp. Compl. at 1). Singfield alleges he was sent back to his cell without pain medication or a wrap to stabilize his hand and that nothing was done to clean the scratches and abrasion on his hand. (Supp. Compl. at 1). At the time, however, Singfield had a current prescription

3

for Motrin 800 mg and Tylenol #3 for pain relief. (Medical Records at 18). Buck had no other encounters with Singfield concerning his left pinky finger. (Buck Decl. ¶ 6).

Singfield asserts that he did not receive a half-cast or splint until August 11, 2016 and he was not given pain medication until August 15, 2016, meaning that he "was suffering" for nearly three weeks. (Supp. Compl. at 1). However, Singfield's medical records show that Singfield was seen by medical providers for complaints of pain in his left hand on July 29, 2016 and August 8, 2016. (Medical Records at 20–23). The notes for Singfield's July 29, 2016 visit indicate that Springfield's hand had been splinted and wrapped, Singfield had a current order for Tylenol #3, and providers had recommended exercises to improve his range of motion. (Id. at 20). At the August 8, 2016 visit, Singfield told licensed practical nurse Ryan Browning that he thought he had rebroken his hand when he was involved in another altercation. (Id. at 22). Browning did not observe any redness or swelling to Singfield's left hand or fingers, except for the pinky finger, which was slightly swollen. (Id.). Additionally, Singfield had a reduced range of motion and was unable to fully bend his left pinkie finger. (Id.).

On August 11, 2016, Singfield underwent another x-ray, which revealed a chronic boxer's fracture with some interval healing. (Id. at 24). Singfield received another splint and was prescribed Tylenol #3 for pain. (Id.). On August 14, 2016, nurse practitioner Holly Pierce requested an orthopedic consultation for Singfield. (Id. at 25).

On August 15, 2016, Singfield attended a follow-up to his July 6, 2016 orthopedic consultation. (Id. at 26). Nurse practitioner Peggy Mahler noted that Dr. Carls had evaluated Singfield for a left non-dominant boxer fracture and found the fracture was in a

4

good position for healing. (Id.). Mahler taught Singifled how to "buddy tape" his pinky finger to his ring finger to help stabilize it. (Id.). Singfield also "reported that he re-injured his right hand" during a fight on August 11, 2016. (Id.). Mahler prescribed Singfield Tylenol #3 for pain relief and referred him for orthopedic consultation. (Id.).

Dr. Carls examined Singfield's left hand on August 25, 2016. (Id. at 28). Dr. Carls indicated that Singfield's left-hand boxer fracture had been healing but was re-fractured in another fight. (Id.). Dr. Carls noted that Singfield did "not have any rotational deformities" and could "make a full first." (Id.). Dr. Carls recommended taking an x-ray the next month and cautioned Singfield to avoid fighting to let the fracture heal. (Id.).

On August 30, 2016, Singfield was seen by Dr. Mahboob Ashraf for complaints of lower back pain. (Id. at 29). Singfield was prescribed a two-month regimen of Tylenol #3. (Id.). Singfield did not complain of pain in his hand at that time. (Id.).

On December 6, 2018, Singfield filed a Complaint against Buck. (ECF No. 1). At bottom, Singfield alleges that Buck failed to adequately treat the fracture to his left pinky finger in violation of the Eighth Amendment to the United States Constitution.[3] (Supp. Compl. at 1). Singfield seeks compensatory and punitive damages. (Compl. at 3).

On April 24, 2019, Buck filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 14). Singfield filed an Opposition on June 3, 2019. (ECF No. 16). Buck filed a Reply on June 26, 2019. (ECF No. 19).

---

[3] To the extent Singfield intends to raise state law claims for medical malpractice and negligence, the Court declines to exercise supplemental jurisdiction and will dismiss such claims without prejudice. See 28 U.S.C. § 1367(c)(3).

5

## II. DISCUSSION

**A. <u>Conversion</u>**

Buck's Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. See <u>Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.</u>, 788 F.Supp.2d 431, 436–37 (D.Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." <u>Bosiger v. U.S. Airways</u>, 510 F.3d 442, 450 (4th Cir. 2007). Pursuant to Rule 12(d), however, a court has the discretion to consider matters outside of the pleadings in conjunction with a Rule 12(b)(6) motion. If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." <u>Id.</u> at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is

6

necessary. Id. at 165–67. "When the extra-pleading material is comprehensive and will enable a rational determination of a summary judgment motion in accordance with the standard set forth in Rule 56, the district court is likely to accept it." Id. at 165. By contrast, when the extraneous material is "scanty, incomplete, or inconclusive, the district court probably will reject it." Id. at 165–66.

A court may not convert a motion to dismiss to one for summary judgment sua sponte unless it gives notice to the parties that it will do so. See Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998). In this case, pursuant to the dictates of Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court notified Singfield of his right to respond and advised that he may file affidavits, declarations, and exhibits along with his response to Buck's Motion. (See ECF No. 15). However, Singfield did not file any affidavits or exhibits with his Opposition, nor did he submit a Rule 56(d) affidavit expressing a need for discovery. Additionally, Buck expressly captioned her Motion "in the alternative" for summary judgment and submitted matters outside the pleadings for the Court's consideration. In that circumstance, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." Laughlin, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); see Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp., 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not

7

exclude from its consideration of the motion the supporting extraneous materials."); Fisher v. Md. Dept. of Pub. Safety & Corr. Servs., Civ. No. JFM–10–0206, 2010 WL 2732334, at *3 (D.Md. July 8, 2010). Accordingly, the Court will construe Buck's Motion as one for summary judgment.

**B.     Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation

or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)). Furthermore, "'[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." Id. Further, if the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**C.  Analysis**

Buck contends she is entitled to judgment as a matter of law because there is no evidence that she was deliberately indifferent to Singfield's medical needs. The Court agrees.

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; see also Estelle v. Gamble, 429 U.S. 97, 102 (1976). "It is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'" Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (citation omitted).

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendant, or her failure to act, amounted to deliberate indifference to a serious medical need. See Estelle, 429 U.S. at 106; Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014); Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also Hudson v. McMillian, 503 U.S. 1, 9 (1992); DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018).

Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute

medical malpractice will not rise to the level of deliberate indifference." Formica v. Aylor, 739 F.App'x 745, 754 (4th Cir. 2018). Indeed, mere negligence or malpractice does not rise to the level of a constitutional violation. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975); Donlan v. Smith, 662 F.Supp. 352, 361 (D.Md. 1986) (citing Estelle, 429 U.S. at 106). Moreover, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977). "Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems." McManus v. Elliott, No. CV ELH-19-1402, 2020 WL 533010, at *15 (D.Md. Jan. 31, 2020).

At bottom, evidence in the record demonstrates that Buck did not act with deliberate indifference toward Singfield. When Buck assessed Singfield on July 23, 2016 for exposure to pepper spray, she examined his left hand in response to his complaints of pain. Buck noted Singfield's recent treatment for his left-hand fracture and reported that Singfield was not in distress. Singfield alleges that Buck admitted Singfield's hand looked swollen and broken but told him he would have to wait until after the weekend to see a provider for treatment.[4] However, because Buck treated Singfield in the early hours of July 23, 2016—a Saturday—it is reasonable that Singfield would not receive additional treatment until a week day. And although Singfield alleges he did not receive any pain

---

[4] Although Singfield's medical records note that Buck did not observe any swelling, Buck does not specifically dispute Singfield's allegation. (See Buck Decl., ECF No. 14-6).

11

medication for his injury, Singfield already had active prescriptions for Motrin 800 mg and Tylenol #3 that would have helped alleviate any discomfort. Moreover, Singfield's belief that he should have received a hand wrap to stabilize the injury does not support a deliberate indifference claim, as a prisoner's disagreement with his course of medical treatment is not sufficient to show an Eighth Amendment violation. See Wright, 766 F.2d at 849. This is especially true where Buck was aware that Singfield was receiving ongoing treatment for his fracture and had been evaluated only the day before. In all, it cannot be said that Buck failed to make a sincere and reasonable effort to care for Singfield's medical problems. See McManus, 2020 WL 533010, at *15.

Further, Singfield's medical record reveals that he received constitutionally adequate treatment for his left-hand fracture both before and after his July 23, 2016 visit with Buck. Singfield was evaluated by several medical providers—including an orthopedist, physician, nurse practitioner, and other nurses—for his fractured pinky finger and subsequent re-injuries. His fracture was treated with splints, finger wraps, and pain medication. Singfield received numerous x-rays and training on exercises that could improve his mobility. Indeed, Singfield's left-hand boxer fracture has since healed. (Getachew Decl. ¶ 3, ECF No. 15-4). Taking all these facts together, the medical treatment Singfield received simply does not amount to an Eighth Amendment violation.

In sum, there is no genuine dispute of material fact to preclude summary judgment, and Buck is entitled to judgment on Singfield's Eighth Amendment claim as a matter of law.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Buck's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 14), which it construes as a motion for summary judgment. A separate Order follows.

Entered this 13th day of March, 2020.

                   _____/s/_____
                   George L. Russell, III
                   United States District Judge